IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MANJU SHARMA,

    Plaintiff,

  v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

No. C 11-00551 WHA

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security action, plaintiff appeals the denial of disability benefits. Plaintiff's motion for summary judgment is **DENIED**, and defendant's motion for summary judgment is **GRANTED**.

## STATEMENT

Plaintiff filed an application for supplemental social security income in October 2008, alleging a disability onset date of September 5, 2006. The application was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge, and one was held in December 2009. Plaintiff and her husband both testified. A vocational expert also testified telephonically (AR 15). In January 2010, the ALJ denied the claim for disability benefits. The Appeals Council denied plaintiff's request for review, making the ALJ's decision final (*id.* at 4, 15–22). Plaintiff then filed this action for judicial review of the ALJ's decision.

After determining plaintiff's residual functional capacity, the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were not credible "to the extent they [were] inconsistent with" the RFC assessment. The ALJ found plaintiff's allegations regarding the limiting effect of her symptoms "inconsistent with the evidence of the record." Also, the ALJ found plaintiff's description of the limitations to her daily activities to be "inconsistent with the medical evidence and unpersuasive" (*id.* at 21). The ALJ concluded that plaintiff was capable of performing past relevant work as a medical billing clerk and a production supervisor, but that she could "not work where there are bright lights" (*id.* at 18, 21).

Plaintiff challenges the ALJ's assessment of her RFC, claiming it was not based on substantial evidence. Plaintiff also claims that the ALJ's finding that she lacked credibility concerning the limiting effects of her symptoms was legally insufficient. Finally, plaintiff claims that the ALJ failed to properly consider third-party testimony (Pl. Br. 4, 7, 11). Defendant opposes plaintiff's motion and moves for summary judgment affirming the ALJ's decision (Def. Br. 1). This order follows full briefing.

**ANALYSIS**

A decision denying disability benefits shall be upheld on appeal if it is supported by substantial evidence and free of legal error. Substantial evidence is "more than a scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The court must consider the entire administrative record, including evidence that does not lend support to the ALJ's conclusion. Where evidence in the record is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

1. **PLAINTIFF'S SENSITIVITY TO LIGHT WAS PROPERLY CONSIDERED.**

Plaintiff challenges the ALJ's assessment of her RFC, claiming that her sensitivity to light "was a significant limitation not fully and accurately addressed" in the ALJ's determination that plaintiff was capable of performing past relevant work (Pl. Br. 6). In support of this argument,

2

1    plaintiff highlights two exchanges in the transcript of her hearing. *First*, plaintiff notes that on the
2    day of the hearing the ALJ observed plaintiff shading her eyes from the light. Plaintiff refers to
3    the following exchange between the ALJ and plaintiff (AR 329):

4        ALJ:    Ms. Sharma, you're shading you eye here today.
        Do the lights bother you?

5        CLMT:    Yes.

6        ALJ:    Do fluorescent lights bother you, or any bright
7            light?

8        CLMT:    Any bright light.

9        ALJ:    And when you're around the house, how do you —
10           do you wear a cap or a hat?

11       CLMT:    I wear a cap, and I don't turn on the light. We use a
        table lamp. So table lamps don't bother me.

12       ALJ:    Do you get — does it hurt after — if you sit in a
13           room like this and don't shade your eyes —

14       CLMT:    Yeah, it's bother me [sic]. Like then I have to do
        this.

15       Plaintiff argues that this exchange demonstrates that the ALJ's determination that she
16   could work in an office setting was flawed because the lighting at the hearing — which took place
17   in an office building — was too bright for her to tolerate, and thus the lighting of *any* office
18   setting would be intolerable. Plaintiff admitted during her testimony, however, that she can
19   tolerate light from table lamps. Illumination from a table lamp — as opposed to overhead
20   lighting — is possible in an office setting.

21       Further, it is clear that the ALJ *did* take plaintiff's sensitivity to light into account in
22   concluding that plaintiff was capable of office work. The ALJ stated that plaintiff "should not
23   work where there are bright lights . . . [or] where depth perception, peripheral vision, or stereo
24   vision is required, and therefore requiring no exposure to hazards, which is also a precautionary
25   measure for history of seizure" (*id.* at 18).

26       *Second*, plaintiff argues that an "ambiguity" that arose during the VE's testimony at the
27   hearing was not properly resolved in the ALJ's decision. During the VE's testimony, the ALJ
28

3

1  posed a hypothetical question about the functional capability of a person with plaintiff's
2  limitations. The VE replied (*id.* at 332):

>There's something that's a little ambiguous here, and I think we
>need to talk about it. The concept of no bright lights, I think a
>retail environment has bright lights. But I don't necessarily
>believe the office environment has bright lights. So I needed to at
>least explain my definitions to you. Based upon your hypothetical,
>I think the work as a medical biller, and also the supervisory work,
>are administrative in nature. I think those two jobs would still be
>on the table.

Plaintiff claims that the "ambiguity was not corrected by the VE's distinction between retail and office lighting," and that clarification is required as to the issue of plaintiff's light sensitivity (Pl. Br. 6). Plaintiff also argues that the VE — who testified telephonically — was not physically present to observe the lighting at the hearing and had he been, he might have addressed the ALJ's hypothetical question differently (Opp. 2).

There is no indication that further clarification of the VE's answer to the ALJ's hypothetical question was required. The VE identified that there was "something ambiguous here," then clarified the ambiguity by distinguishing between the lighting in retail and office settings. He ultimately advised that in his opinion, the plaintiff could tolerate the lighting of an office setting. The fact that the VE was not physically present to evaluate the brightness of the lighting at the hearing is irrelevant. His professional opinion was that plaintiff could work in an office environment, and the ALJ properly relied upon that expert opinion in his determination that plaintiff was capable of past relevant work.

### 2. THE ALJ'S CONCLUSION REGARDING PLAINTIFF'S CREDIBILITY WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.

The ALJ's finding that plaintiff's description of her limitations lacked credibility was supported by substantial evidence and free of legal error. Plaintiff argues that the ALJ erred by failing to identify contradictions between her statements and the record, and by citing information in his report in an improper context. Plaintiff is wrong on both accounts.

*First*, plaintiff argues that the ALJ failed to identify direct conflicts between her description of her limitations and the objective medical facts in the record. The ALJ, however, identified specific inconsistencies concerning plaintiff's vision tests. For example, while plaintiff

4

1  complained of vision loss in her right eye, all examinations found her to have 20/30 vision or
2  better in her right eye. In fact, a vision test in August 2008 reported the vision in her right eye to
3  be *better* than an test in July 2008.

4  Additionally, the ALJ determined that plaintiff's daily activities were not limited to the
5  extent she represented. The ALJ relied upon medical evidence from the record stating that
6  plaintiff was "independent with activities of daily living, gait, and mobility," as well as plaintiff's
7  own testimony that she was able to help her children get ready for school, watch television,
8  prepare simple meals, and walk to the park (AR 21).

9  *Second*, plaintiff claims that the ALJ cited the record "incompletely" and without
10 necessary context. In reviewing an ALJ's decision, however, a court looks at the administrative
11 record as a *whole*. The ALJ gave "careful consideration [to] the entire record" in finding plaintiff
12 to be more independent than she represented herself to be (*id.* at 17). The ALJ then summarized
13 the portions of the record upon which he relied in his report. The ALJ did not recite the whole
14 record word for word, but this does not mean that his conclusions were not properly grounded.

15 **3.     THIRD-PARTY TESTIMONY WAS PROPERLY CONSIDERED.**

16 Plaintiff argues that the ALJ erred by failing to consider the testimony of plaintiff's
17 husband in his decision. Plaintiff states that the ALJ is *required* to consider lay witness
18 testimony, and that if he does not, he must give a "germane reason" for failing to do so, citing
19 *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Plaintiff misstates the holding of *Dodrill*.
20 *Dodrill* holds that if an ALJ *discounts* a lay witness's testimony, he must give a germane reason
21 for doing so. The ALJ here did not discount third-party testimony. In fact, he *did* consider the
22 testimony of plaintiff's husband in making his determination. In his decision, the ALJ stated that
23 both plaintiff "and her husband testified that he goes with her when she leaves the home"
24 (AR 19). The ALJ neither discounted nor excluded lay witness testimony in his determination.

5

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED**, and defendant's motion for summary judgment is **GRANTED**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: October 11, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE